Applegarth *vs.* Robertson.

</div>

(Decided 23rd June, 1886.)

---

## RUFUS W. APPLEGARTH *vs.* SAMUEL ROBERTSON.

*Vendor and Vendee—Action on Promissory note for Purchase money—Defence—Purchaser with Notice.*

In an action on a promissory note given in part payment of the purchase money of a house, the vendee may set up as a defence, that the gable wall was at the time of the purchase, defective and unsafe; and may also sue the vendor to recover damages sustained by reason of his misrepresentations in regard to the wall.

If the plaintiff, who purchased the note from the vendor, knew when he bought it, that the vendee had sued the vendor to recover damages by reason of the latter's misrepresentations in regard to the

wall, he must be considered as a purchaser of the note with full knowledge of its infirmity.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, and BRYAN, J.

*Julian I. Alexander,* for the appellant.

*Ferdinand C. Dugan,* and *George R. Willis,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

There cannot be, it seems to us, any difficulty in this case. The suit is brought on a promissory note of $250, made by the appellee, and endorsed by the payee, Cone, to the appellant. The note was given to Cone in part payment of the purchase money of a house, and as a defence to the action, the appellee alleges that the gable wall of the house was, at the time he bought it, defective and unsafe, in consequence of which he was obliged to tear it down and rebuild it, at an expense of $1200. That Cone falsely and fraudulently represented the " wall to be as solid and safe as any wall in the city," upon the faith of which representations the appellee was induced to buy the house, and that the appellant took the note with full knowledge of its infirmity.

The first question, then, is whether there is any evidence from which the jury could reasonably find that the wall was defective and dangerous? It was an ordinary nine-inch gable wall, with no less than twelve windows, sixty feet long and forty feet high. The proof shows that it had bulged several inches, and upon an examina-

tion by the City Inspector, Elder, it was condemned as being unsafe and dangerous, and the appellee was thereupon directed to have it taken down, in pursuance of the requirements of the City Code. In addition to this, the witness Weber, an architect of twenty-eight years experience, and at one time a builder, made a careful examination of the wall, and reported it as being unsafe. The appellant offered evidence tending to show that the wall, although bulged, was perfectly safe; but we are not dealing with the weight of the evidence. That was a question for the jury. Our inquiry is whether there was any evidence from which the jury could find that the wall was unsafe, and as to this question we have no difficulty whatever. If the evidence offered by the appellee was believed by the jury, there could be no escape from the conclusion that the wall was defective and unsafe.

Then as to the false and fraudulent representations alleged to have been made by Cone. The appellee, in his testimony, says he did not see the bulge in the wall, but noticed that it was a very long wall, and full of windows, and was therefore induced to make some inquiry of Cone about it, to which he replied that it was as safe and solid as any wall in the city. The witness, R. W. Robertson, testifies he heard Cone tell the appellee that it was a first-class wall, and that he would guarantee it to be as good as any wall in Baltimore. Now the proof shows there was a bulge in the wall at that time of at least three and a half inches, and that subsequently, upon an examination by the City Inspector, it was condemned as being dangerous; and, in addition to this, we have the testimony of Weber, the architect, who made a thorough examination of the wall, and was of the opinion that it was unsafe. Cone, too, was himself a builder of large experience, and whether the representations in regard to the condition of the wall were made by him in good faith, was, we think, under all the circumstances, a question for the jury.

And as the appellant knew when he bought the note, that the appellee had sued Cone to recover damages by reason of Cone's misrepresentations in regard to the wall, he must be considered as a purchaser of the note with knowledge of its infirmity.

But then again it was pressed in argument, and strongly too, that the appellee was precluded from setting up the defective condition of the wall as a defence in this suit, because he had sued Cone to recover damages on account of the same. In other words, it was said he could not, in an action to recover the purchase money, set up as a defence the defective condition of the wall, and at the same time sue Cone for damages alleged to have been sustained, by reason of his misrepresentations in regard to the wall. But this position is not we think tenable. The appellee had paid the entire purchase money, except the note for $250, to recover which this suit was brought, and the proof shows that he had expended one thousand dollars at least in rebuilding the wall. He had the right therefore not only to sue Cone to recover damages, which he sustained by reason of Cone's misrepresentation, but also to set up the defective and unsafe condition of the wall as a defence to the suit brought on the note to recover the balance of the purchase money. This we understand to be the rule laid down in *Mondel vs. Steel*, 8 *M. & W.*, 858, and *Rigge vs. Burbidge*, 15 *M. & W.*, 598.

In *Mondel vs. Steel*, an action was brought by the buyer to recover damages for breach of an express warranty in the quality of a ship built under a written contract. The defendant pleaded that the buyer had already recovered damages by setting up the breach of warranty in a suit brought by the defendant to recover the price of the ship; and this plea was held bad on demurrer. Baron PARKE said:

"It must, however, be considered, that in all these cases of goods sold and delivered with a warranty, and

work and labor, as well as the case of goods agreed to be supplied according to a contract, the rule which has been found so convenient is established; and that it is competent for the defendant, in all of those, not to set-off, by a proceeding in the nature of a cross action, the amount of damages which he has sustained by breach of the contract, but simply to defend himself by showing how much less the subject-matter of the action was worth, by reason of the breach of contract; and to the extent that he obtains, or is capable of obtaining, an abatement of price on that account, he must be considered as having received satisfaction for the breach of contract, and is precluded from recovering in another action to that extent; but no more."

This, Mr. Benjamin says, is the leading case now always cited for establishing, *first*, that the buyer may set up the defective quality of the warranted article in diminution of the price; and *secondly*, that he must bring a cross action, if he desires to claim special or consequential damages, which action is not barred by reason of his having obtained a diminution of price in a previous action brought by his vendor. *Benjamin on Sales*, 893.

It follows from what we have said, there was no error in the several instructions granted by the Court. If Cone honestly believed that the wall in question was a safe and good wall, and used no deceit or fraud to persuade the appellee, that it was a good and safe wall, then in the absence of an express warranty by Cone the plaintiff was entitled to recover.

On the other hand, if the wall was unsafe, and Cone knowing it to be unsafe, falsely and fraudulently represented it to be safe, and the appellee relying on said representations purchased the house, believing the wall to be safe, and the damages sustained by him by reason of the defective condition of the wall exceeded the amount of the note sued on, and the appellant bought the note

with full knowledge of its infirmity, then the plaintiff was not entitled to recover. And so the Court instructed the jury.

*Judgment affirmed.*

(Decided 23rd June, 1886.)