County Commissioners of Harford County *vs.* Wise.

> *Order reversed, and*
> *case remanded.*

(Decided 11th June, 1889.)

---

THE COUNTY COMMISSIONERS OF HARFORD COUNTY *vs.* GEORGE Y. WISE, and SARAH A. WISE.

*Municipal Corporation—Defective bridge—Suitableness of Location—Evidence—Act of 1886, ch. 415—Pleading— Venue—Sealed Verdict—Motion in Arrest of Judgment.*

When a municipal corporation constructs or repairs a bridge on a highway, it is liable for damage caused by the negligent, careless or unskilful manner of performing the work; and in determining whether a structure has been carefully and skilfully erected, the suitableness of its location must be considered.

In an action to recover damages done to certain mill property in 1885, by the washing away of a bridge, alleged to have been unskilfully erected, it is proper to allow a witness, from his knowledge of the stream, extending back to 1844, to testify whether the span and height of the bridge were sufficient to enable the water to pass.

A sketch or painting of the scene, showing the location "of the bridge, the milldam, and country adjacent," made by one who was an artist and draughtsman, but who had never seen the bridge, was admissible in evidence, as under the Act of 1886, ch. 415, the jury could have gone in person to inspect the locality.

A surveyor and civil engineer, who had been a bridge superintendent, and was familiar with the building of bridges, is com-

County Commissioners of Harford County *vs.* Wise.

petent to testify that the bridge was constructed in an inferior and unskilful manner, although his opinion is based upon an examination of the remains of the abutments, the foundations under them, and the mortar found in them, not made until about two years after the bridge was swept away.

A declaration, in the body of which the place, where the injury complained of was done, is distinctly shown, is not demurrable because the name of the county is omitted from the margin.

Where the caption to a sealed verdict sets forth in full and at length the names of the plaintiffs, but in the body of the paper it is stated that the jury found for the "plaintiff," it sufficiently appears that the verdict is for the plaintiffs, and a motion in arrest of judgment for the reason that the verdict was for the plaintiff, and not for the plaintiffs, is properly overruled.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First, Second, Third* and *Fourth Exceptions,* are sufficiently set out in the opinion of the Court.

*Fifth Exception.*—The plaintiffs offered the three following prayers:

1. If the jury find that the bridge above Millford mills was carried away by a flood on the 3rd day of August, 1885, and in passing down the stream carried away plaintiffs' dam, then plaintiffs are entitled to recover such sum as will compensate them for the injury sustained and loss suffered; provided the jury also find that the location, construction or condition of the bridge was negligent, and that the carrying away of the bridge was in consequence of such location, construction or condition.

2. If the jury find that on the 3rd day of August, 1885, the plaintiffs were the owners of the property situated on Deer Creek, described in the deed from Preston, offered in evidence, with buildings and milldam as part

thereof, and which has existed there for thirty years or more; and that up to the year 1883, the stream was crossed by the county road, at a ford below the dam, and that about that year the defendants changed the location of the county road so as to cross the stream by an iron bridge set upon abutments connected by wing walls with the banks on either side the stream; and if the jury shall believe from all the evidence that said abutments, or either of them, were improperly and insecurely erected for the purpose for which they were designed; and that in building said abutments they were not built as high or with such space between as was reasonably necessary in times of freshet; and that owing to such defective construction (if they find such) or insufficient space provided for venting the water, one of said abutments gave way and the bridge was carried off on the 3rd of August, 1885, and was lodged upon the plaintiffs' milldam, and that thereby the said milldam was washed out and injuries sustained by the said mill and by the washing away of other buildings, then the plaintiffs are entitled to recover the losses occasioned thereby and sustained by them in the destruction of their property and business, notwithstanding the jury may be of opinion that the water at the time was higher than usual in times of freshet.

3. Even if the jury find that the flood which carried away the stream was of unusual or unprecedented height, still if they further find that but for the improper and negligent location, construction or condition of the bridge, if they so find, the disaster would not have occurred, then the unusual or unprecedented height of the flood is no defence.

The defendant offered eleven prayers, as follows, to wit:

1. That there is no sufficient legal evidence in the cause of such negligence on the part of the defendant in

the discharge of its legal obligations to the plaintiffs, as would entitle them to a recovery in this action, and their verdict must be for the defendant.

2. That the verdict of the jury must be for the defendant, because there has been no evidence legally sufficient to show that the injuries complained of were caused by the negligence of the defendant.

3. If the jury shall find that the plaintiff, Sarah A. Wise, was the wife of George Y. Wise at the time of the injuries complained of, and when the suit was brought, and shall further find that the said Sarah was the owner of the property mentioned in the declaration as having been injured, and shall further find that the said George Y. Wise and Thomas Shannon had possession of the mill property, and were conducting the milling business there at the time of the injuries complained of, then their verdict must be for the defendant under the pleadings and evidence.

4. That the location, height above water, and width of space of the bridge mentioned in the declaration, were matters within the judgment and discretion of the county commissioners of Harford County; and if they shall find that when application was made for the building of said bridge, said commissioners determined to erect the same, visited the place where it was to be built, examined water marks, inquired from divers old residents of the neighborhood as to previous floods at the point, and then determined and fixed upon the height, location and span of said bridge, according to their best judgment; and if the jury shall further find that such bridge was swept away by a flood of extraordinary and unprecedented height in the stream, only because it was not wisely located or insufficient in height and width of span, and not because of any unskilfulness in the work of building said bridge, then the verdict of the jury must be for the defendant.

5. If the jury shall believe from the evidence that the bridge and abutments mentioned in the declaration were so located and constructed, and in such condition of repair on the 3rd day of August, 1885, as to resist the force of the usual and preceding floods in the stream or dam over which it was located; and shall further find that the flood of the said 3d of August was one of unusual and unprecedented height and destructiveness, and that said bridge was carried away because of such unusual and unprecedented height and destructiveness of the flood, then the verdict of the jury must be for the defendant.

6. That the duty imposed by law upon the county commissioners, does not require them to construct and keep the public bridges in perfect condition and repair, but only that they shall use reasonable care and diligence in the exercise of the powers vested in them in regard to the same; and if the jury shall find that the county commissioners of Harford County did use ordinary and reasonable care and diligence in and about the construction of the bridge complained of, and that the same was swept away by a flood of extraordinary and unprecedented height and destructiveness in the stream over which it was erected, then the verdict of the jury must be for the defendant, although they may believe said bridge ought to have been located or placed higher over the water, or the abutments better built and wider apart.

7. That the county commissioners cannot be held responsible for the action of the elements; and if the jury find that by reason of an unprecedented storm or freshet, the bridge and abutments mentioned in plaintiffs' declaration were washed down and destroyed, then the county commissioners are not liable for the injury complained of, unless the jury find negligence on the part of said defendants in the location, construction, or erection of said abutments and bridge.

8. If the jury shall find that a petition of citizens was presented to the county commissioners of Harford County, for a bridge over Preston's dam, that said commissioners then determined to build the same, and they or a majority of them, visited said point, viewed the place, examined the water marks of previous floods, inquired amongst the residents of the place, or those who had knowledge of the height to which the stream or dam had previously risen in times of high freshets, and then fixed upon the plan, height and span of said bridge, advertised for proposals for building the same, and gave out the contract to a skilful and reliable bridge builder, and also employed a competent and skilled mechanic to build the abutments for said bridge, and after the same was completed, accepted and adopted the same as a proper and suitable structure for its purposes, and that in all these matters they acted according to their best judgment, and with reasonable discretion, and believing they were building a bridge of sufficient height and width, in a proper place, and with sufficient abutments to be safe and sufficient for the floods of said stream or dam, and if the jury shall further find that the flood of 1885, was one of unusual and unprecedented height, and that said bridge was carried away because of such height and violence of the flood, then the verdict of the jury must be for the defendant, although they may believe said bridge ought to have been built higher, at a different point, and with better constructed abutments, and with greater width of span between them.

9. If the jury find from the evidence that the grantors in the deed to the county commissioners offered in evidence, conveyed the land in said deed, for the purposes mentioned therein, and that the bridge, the subject of · controversy in this case, was located and built upon said land, and was afterwards received and accepted by said grantors, as by other citizens of said county, as a proper

structure, in accordance with said deed, then the said grantors, and those holding under them, are estopped from denying the proper location thereof.

10. If the jury shall find for the plaintiffs, then in estimating the damages to be allowed, they shall not take into consideration, or allow for any loss of profit, or loss of business at the grist mill of the plaintiffs, caused by the washing away or destruction of the dam of plaintiffs, 3rd of August, 1885, nor shall they take into consideration any damage done to the new dam or other property of the plaintiffs by the flood of May, 1886, but shall confine their verdict to such damage to the dam, buildings and roadway of the plaintiffs as they may find was directly caused to the same by the washing away of the bridge.

11. If the jury shall find for the plaintiffs from the evidence, then, in estimating the damages to be allowed, they shall not take into consideration or allow for any loss of profit or loss of business at the grist mill of the plaintiffs, caused by the washing away or destruction of the dam of the plaintiffs, 3rd of August, 1885, nor shall they take into consideration any damage done to the new dam or other property of the plaintiffs by the flood of May, 1886.

The Court (DUFFY, J.,) granted the plaintiffs' prayers, but refused to grant the first, second, third, fourth and ninth prayers of the defendant, as also its tenth prayer in the form in which it was offered, but granted the same in the modified form of its eleventh prayer, which was offered at the instance of the Court. The defendant excepted, and took this appeal, the verdict having been for the plaintiffs.

The cause was argued before ALVEY, C. J., MILLER, BRYAN, and McSHERRY, J.

County Commissioners of Harford County *vs.* Wise.

*Joseph P. Merryman,* and *John I. Yellott,* for the appellant.

*T. R. Clendinen,* and *D. G. McIntosh,* for the appellees.

McSHERRY, J., delivered the opinion of the Court.

On the eleventh day of February, 1885, Sarah A. Wise became the owner of a saw mill and a grist mill, located on Deer Creek in Harford County. Prior to her purchase of the property the County Commissioners changed the bed of a public road, which formerly crossed the stream below the breast of the mill-dam, and located it some short distance above the dam. They constructed at the same time an iron bridge across the creek connecting with this new road. On the third of August, 1885, a destructive freshet demolished the bridge. The mill-dam was partially swept away, and other injuries were done to the property of Mrs. Wise and her husband. They thereupon sued the Commissioners, and the case, after having been removed first to Baltimore County, and then to Baltimore City, was finally tried there in the Court of Common Pleas. The plaintiffs below, who are the appellees here, insisted that the Commissioners had been guilty of negligence in locating and constructing the bridge, and that in consequence of such negligence the bridge was washed from its abutments, and was driven by the flood upon the dam, destroying the latter and causing the other injuries particularly set forth in the record. Considerable testimony was adduced by the appellees tending to show that the abutments of the bridge had been unskilfully and carelessly constructed; that they had been built upon insufficient and improper foundations; that they had been placed too near to the margins of the stream, whereby the passage-way for the water was seriously narrowed; and that they had not been, by several feet, elevated far enough above the sur-

County Commissioners of Harford County *vs.* Wise.

face of the stream to allow the water, when high and swollen, to pass freely under the bridge. The appellees also offered evidence tending to show that the bridge had been located at an unsuitable place over a bend or curve in the creek,—the worst point in that section of the county.

There was, as is usually the case in such controversies as this, much conflict in the evidence on these subjects, but it is not material or necessary that it be noticed or referred to in considering the questions presented by this appeal.

When a municipal corporation undertakes, in the discharge of its duties, to construct or repair a bridge upon a highway, it is responsible for damage caused by the negligent, careless or unskilful manner of performing the work. This liability has been asserted and enforced by this Court in numerous adjudged cases, some of them of such recent date as to render it unnecessary to make citations from them, or to repeat here the reasons upon which they were determined. *Kranz vs. Mayor, &c., of Baltimore,* 64 *Md.,* 491; *Hitchins Bros. vs. Mayor, &c., of Frostburg,* 68 *Md.,* 100.

All the authorities agree in holding that where the injury complained of is the result of the exercise by a municipal corporation of its *quasi* judicial powers, an action will not lie if there has been no negligence, carelessness or unskilfulness in doing the work which caused the damage. 2 *Dillon Mun. Cor.,* (2d *Edition*) *sec.* 753, *and cases cited in the note thereto.* But what particular acts are to be regarded as discretionary or *quasi* judicial on the one hand, and what purely ministerial on the other, is a question often exceedingly difficult to determine, and one which the adjudged cases are by no means harmonious in deciding. It would be a hopeless task to attempt to reconcile these conflicting decisions. There are extreme ones in both directions.

County Commissioners of Harford County *vs.* Wise.

Whilst it is important that the necessary powers of a municipality, conferred upon it for the public wellfare, should not be unreasonably restricted, and should not be so construed as to subject the body corporate to liability in a civil action for an honest mistake of judgment made when acting in a *quasi* judicial character, it is no less incumbent on the Courts to lay down no rule which shall, when applied in practice, deprive the individual of redress, where his property has been damaged or invaded, or his person has been injured by the improper and negligent execution of these same discretionary powers. It is not easy, if indeed it be possible, to define with precision, except theoretically, the exact line which divides the *quasi* judicial from the ministerial powers of a public corporation, because they are often so dimly separated as to be apparently blended together. "All that can be done with safety" observed Mr. Justice Foote, in *Lloyd vs. Mayor, &c., of New York, 1 Seld.*, 369, " is to determine each case as it arises." However, the decision of the case at bar does not require that we should adopt any definition of these powers, broad and general enough to comprehend other questions than the ones involved in this controversy. A bridge, like a sewer, may be so *located* as inevitably to cause injury to another, no matter how skilfully put together; and it would be strange indeed, if the municipality could be held for the damage resulting from the defective mechanical execution of the work when properly located, and should be exempted from liability for precisely the same damage to the same individual caused by the careless and unskilful *location* of the same structure when properly put together. The construction of a bridge at a place totally unsuited for it, because calculated to occasion an injury like that complained of, can not be skilful in any sense of the term. It is undeniably true that a municipal corporation has no more

authority than a private person to create a nuisance. *Noonan vs. City of Albany*, 79 *N. Y.*, 470. It has, consequently, no right to build its works in such a manner and at such a place as will inevitably cause injury to another. *Inhabitants of West Orange vs. Field*, 37 *N. J. Eq.*, 600; *Danbury & Norwalk R. R. Co. vs. Town of Norwalk*, 37 *Conn.*, 109. Where the injury resulted from the narrowness of the span of a bridge, it has been held to be due to a defect in construction. *Perry vs. City of Worcester*, 6 *Gray*, 544. If it be occasioned by the insufficiency of the size of a sewer it is likewise such a defect in construction as will render the corporation liable. *Hitchins Bros. vs. Mayor, &c., of Frostburg*, 68 *Md.*, 100; *Rochester White Lead Co. vs. City of Rochester*, 3 *N. Y.*, 463. . If it be a result of the bridge or sewer being placed at such a locality as to produce the damage actually inflicted, it cannot be said that the construction was other than negligent and unskilful. Skilful construction means something more than skilfully putting suitable materials together. It involves putting them together in a proper manner *upon a site adapted to the structure built*. In determining whether a structure has been skilfully erected the *place* upon which it has been built cannot be overlooked or disregarded. No building located upon ground incapable of supporting it can, in fact, be skilfully constructed. No bridge erected at a point where it will certainly be washed away by high waters, either because of the narrowness of its span, its want of elevation, or because of a bend in the stream, is skilfully or carefully built. · The location necessarily enters into and is a part of the construction. There can be no construction without a location. There can be no skilful construction upon an improper location. The *manner* of building the thing, and the *place* where it is built, must both be considered in determining the question of care and skill in its construction. The fixing of

the location, therefore, as part of the actual construction, is a ministerial act. If any injury be produced by a negligent location of a bridge, the person aggrieved is not, and ought not to be, without remedy. In our opinion it was competent to show by evidence that the bridge in question had been negligently *located*, and that the injury sustained by the appellees was the direct result of such negligence.

Turning now to the exceptions, we find that the first was taken to the ruling of the Court allowing a witness, from his knowledge of the stream, extending back to 1844, to state whether the span and height of the bridge were sufficient to enable the water to pass; and the second exception brings up the action of the Court in admitting evidence as to the unskilful location of the bridge and the inadequacy of its span. For the reasons we have given there was no error in either of these rulings. The ruling complained of in the third exception is not open to objection. The appellee produced a witness who had made "a sketch or painting of the scene, showing location of bridge, the mill-dam and country adjacent;" and after proving that the witness was an artist and draftsman, but that he had never seen the bridge, offered the sketch in evidence and the Court admitted it. As it would have been perfectly competent for the jury to have gone in person to inspect the locality (*Act of* 1886, *ch.* 415,) it is not perceived how any error was committed in submitting to them a correct representation of what they would have seen had they gone upon the premises. The question passed on in *Peoples' Passenger Railway Co. of Baltimore vs. Green*, 56 *Md.*, 84, was entirely different.

The appellees proved by Charles B. McLean that he was a surveyor and civil engineer, that he had been a bridge superintendent, and was familiar with the building of bridges; that about two years after the flood of

County Commissioners of Harford County *vs.* Wise.

1885, he examined the remains of the abutments, the foundations under them and the mortar found in them; and he stated his judgment to be that the work was inferior and unskilful. To this the appellants excepted. The witness was undoubtedly competent to give an opinion based on what he saw, and the mere fact that he did not inspect the abutments until some time after the disaster, did not disqualify him from forming a judgment as to the character of the work, and the fitness of the materials used. *Baltimore & Yorktown Turnpike Road vs. Crowther*, 63 *Md.*, 568. We discover no error in the fourth exception.

The fifth exception presents the rulings of the Court on the prayers. The first and third instructions granted at the instance of the appellees, submitting the question of the negligent location, construction and condition of the bridge to the jury, were, for the reasons hereinbefore fully stated, correct; and the action of the Court in rejecting the fourth and ninth prayers of the appellants withholding from the jury, the question of negligence in the location of the bridge, and instructing them that the appellees were estopped from objecting to such location, was consequently without error. The appellants' fifth, sixth, seventh and eighth instructions distinctly submitted to the jury this identical question of the proper location of the bridge, and, taken in connection with those of the appellees, fairly and fully presented the law to the jury on this branch of the case. The appellants' fourth and ninth prayers are wholly inconsistent with its fifth, sixth, seventh and eighth. Having induced the Court to grant the latter, it cannot complain because the fourth and ninth were rejected. *Groff vs. Hansel*, 33 *Md.*, 161.

We do not think the appellees' first and third instructions are open to the criticism that they ignore the non-liability of the appellants if the injury proceeded from

County Commissioners of Harford County *vs.* Wise.

the accident of a flood, unmixed with negligence on the part of the County Commissioners. Under the phraseology of these instructions a recovery was only possible provided the damage complained of resulted directly from the negligence of the defendants. The jury were explicitly told in the sixth instruction of the appellants that the plaintiffs could not recover if the proximate cause of the injury was the flood mentioned in the evidence.

There was no error in granting the second instruction of the appellees, especially as qualified by the eleventh instruction given by the Court as a substitute for the appellants' tenth prayer. The mill was owned by Mrs. Wise. Her husband, the other plaintiff, carried on business at the saw mill on his own account, whilst the grist mill was operated by him and one Shannon. The second instruction allowed the jury to award damages for the injury to the property and business of the plaintiffs, and the eleventh excluded as an element of damages the injury done to the business in which Shannon was interested. There was no inconsistency between them as in *Balto. & Ohio R. R. Co. vs. Blocher*, 27 *Md.*, 277. The tenth prayer which eliminated the loss of business at the saw mill, and restricted a recovery to the damage done to the mill, the dam and the road-ways, was entirely too narrow, and was properly rejected.

The Court was right in rejecting the appellants' first and second prayers. These prayers sought to withdraw the case from the jury upon the assumption that there was no legally sufficient evidence from which they could find that the injuries complained of resulted from the negligence of the appellants, or that the appellants were guilty of any negligence towards the appellees. There was evidence before them from which the jury could legally find that the bridge, when it was washed from its abutments, to which it had never been fastened, was

swept against and upon the dam with a "thud," and caused it to give way, the timbers of the dam having been discovered, after the high waters abated, interlocked with the iron of the bridge, and the bridge having been found some distance below the site of the dam. There was also evidence legally sufficient to show that the bridge was dislodged because unskilfully located and built, and because the water-way was made too narrow between the abutments. Assuming the truth of this evidence, it was sufficient when taken in connection with the other facts in the case, to justify a verdict for the plaintiffs. The third prayer was properly refused because it denied the right to recover for any injury sustained by the appellees, if Shannon had an interest in the grist mill business.

There was a demurrer filed, which the Court properly overruled. It has been insisted that it should have been sustained, because the declaration, so it is alleged, does not disclose any *venue*. The omission of a *venue* may be availed of by demurrer. *Crook vs. Pitcher*, 61 *Md.*, 510. But we think the *venue* is sufficiently laid, and the body of the declaration distinctly shows that the place where the injury was done was Harford County. Where the proper *venue* is laid in the body of the declaration, the county in the margin may be rejected as surplusage. 1 *Chitty Pl.*, (*8th Am. Ed.*,) 274.

After verdict a motion in arrest of judgment was interposed, and the reason assigned was that the verdict rendered was for the *plaintiff* and not for the *plaintiffs*. The verdict was a sealed one, and though in the body of the paper the singular, "plaintiff," is used, the caption sets forth in full and at length the names of both the plaintiffs, and it thus sufficiently appears that the verdict was for the *plaintiffs*. The motion was properly overruled.

A motion was made in this Court to dismiss the appeal, but we have not thought it necessary to consider it.

Finding no errors in the rulings of the Court of Common Pleas, its judgment will be affirmed.

*Judgment affirmed.*