(Decided 8th February, 1894.)

---

## The North Baltimore Passenger Railway Company *vs.* John Arnreich.

*Street car—Injury to Pedestrian—Contributory negligence.*

A pedestrian, who, having first looked before him, and neither seeing nor hearing a car, started to cross a street, and was struck and injured by a horse car coming rapidly round a short curve, will not be precluded from recovering damages for the injuries he sustained, even though his own negligence contributed to the accident, if, by the exercise of reasonable care, the driver of the car could have avoided the consequence of such negligence.

North Baltimore Passenger Railway Co. *vs.* Arnreich.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court. The second prayer of the defendant, which the Court below (RITCHIE, J.,) refused, is set out in full in the opinion of this Court. The insertion of the other prayers of the defendant, as also those of the plaintiff, is deemed unnecessary. The jury rendered a verdict in favor of the plaintiff for $5,500, and judgment was entered thereon. The defendant appealed.

The cause was argued before BRYAN, FOWLER, PAGE, ROBERTS, BOYD, and BRISCOE, J.

*Nicholas P. Bond*, for the appellant.

*Archibald H. Taylor*, for the appellee.

ROBERTS, J., delivered the opinion of the Court.

The defendant company owns and operates a street railway in the City of Baltimore. At about half past seven o'clock in the evening of January 15th, 1892, the plaintiff, going northward on Howard street, sought to cross Centre street, and was run over and injured by one of the defendant's cars. The railway track of the defendant extends up Howard street to Centre street; then turns to the right, and continues in an easterly direction down Centre street. The plaintiff, coming up on the east side of Howard street, on the evening of the accident, was compelled to pass over the track of the defendant, at the point where it curves from Howard into Centre street, and while so crossing Centre street, the accident happened. It appears from the testimony on the part of the plaintiff, that he was familiar with the locality, and had been for nearly five years accustomed to cross the track of the defendant at the same point where the accident occurred, and that if he had seen or heard

the car, all that was necessary for him to have done, was to stand still and let the car pass, but that he looked before him and saw no cars, and heard none; that, after the car turned into the curve, it was in the rear of the plaintiff, and distant about fifteen feet from the point where he was struck.   Mrs. Eickler, a witness on the part of the plaintiff, testified, that she was a passenger on the car in question, and was, at the time of the accident, looking out of the front window at the driver, and the horses; that when they reached the curve the driver hit the horses, and they went quickly around the curve; that she saw the plaintiff on the track just as he was struck; that he was just about stepping over, but the car was coming too fast; that the driver did not see the plaintiff go under the car, but was speaking to another car driver coming down Howard street; if the car had not gone so fast the plaintiff could have gotten over first, but it was impossible, the car was coming too fast; the pole struck the plaintiff on the left side; the driver was looking to the left, and spoke to a man coming down Howard street; the car did not stop at the switch.

Other testimony was given tending to prove that the driver whipped the horses in his car in such manner as to cause them to rear and become frightened, and gallop around the curve.   The testimony offered by the defendant materially conflicts with that of the plaintiff.

The question which has been chiefly argued at the hearing in this Court is whether, on the facts stated, the plaintiff had not by his own negligence *directly* contributed to produce the injury complained of, and accordingly debarred himself all right of recovery; and whether in that state of case, the Court below had not committed error in refusing to grant the defendant's first prayer, which would have taken the case from the jury.   We have repeatedly held that in cases of this character, the Court is never at liberty to withdraw the case from the

consideration of the jury, unless the material facts in issue in the cause, are undisputed and clearly establish the controlling fact that the negligence of the plaintiff has directly contributed to produce the injury complained of.    Since the decision in the Exchequer Chamber of *Tuff vs. Warman*, 94 *Eng. Com. Law Rep.*, 583, this Court has steadfastly adhered to the rule there laid down, as furnishing the clearest and most satisfactory guide in cases of this kind.    For convenient reference, we here repeat it, as follows: "It appears to us, the proper question for the jury in this case, and indeed in all others of the like kind, is whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary and common care and caution, that, but for such negligence or want of ordinary care and caution on his part, the misfortune would not have happened.    In the first case, the plaintiff would be entitled to recover, in the latter he would not, as but for his own fault the misfortune would not have happened. Mere negligence or want of ordinary care or caution would not, however, disentitle him to recover, unless it were such, that, but for such negligence or want of ordinary care and caution, the misfortune could not have happened; nor, if the defendant might by the exercise of care on his part, have avoided the consequence of the neglect or carelessness of the plaintiff." In considering the mutual rights and privileges of pedestrians using the streets of a city, and those which the law accords to street car companies, who supply to the public the means of convenient travel, careful consideration should be given, and a just discrimination exercised, in order that no unreasonable exaction be required of, or unfair burden imposed upon, either. There is undoubted force in the observation of Mr. Jus-

North Baltimore Passenger Railway Co. *vs.* Arnreich.

tice McFARLAND, in *Driscoll vs. Market Street Cable Rail-way Co.*, 97 *Cal.*, 553, when he says: "Street railroads are an established feature of modern city life. They are a convenience and a necessity to all classes of people, and are desired by all. But their operation on crowded streets is necessarily attended with considerable danger to pedestrians,—a danger which all people are bound to know, and against which they should protect themselves by the use of, at least, reasonable caution. While, therefore, the owners of these railroads are to be held to *due care* in the management of their lines, they, when exercising *such care*, are not responsible in damages to a person who, in a careless or reckless or absent minded way, walks suddenly in front of a moving car, and is injured *before there is time to stop it.*" This Court has already held that notwithstanding the negligence of the plaintiff, if the defendant, by the exercise of reasonable care, could have avoided the consequence of the neglect or carelessness of the plaintiff, the defendant is still liable. *Kean vs. Balto. & Ohio Railroad Company*, 61 *Md.*, 154; *People's Passenger Railway Co. of Baltimore vs. Green*, 56 *Md.*, 84; *McMahon vs. North. Cent. Railway Co.*, 39 *Md.*, 449; *Baltimore Traction Co. vs. Wallace*, 77 *Md.*, 435.

The appellant's main contention is that the Court below erred in refusing to grant its second prayer, which reads: "The defendant prays the Court to instruct the jury that it appears from the uncontradicted evidence in the cause that the plaintiff by his own negligence, directly contributed to the happening of the injury complained of, and that their verdict must be for the defendant."

From the statement of proof hereinbefore set out in this opinion, it is very clear that this prayer was properly rejected, as being both misleading and misdirecting to the jury. To have instructed the jury that it

appeared from the uncontradicted evidence in the cause that the plaintiff, by his own negligence, directly contributed to the happening of the injury complained of, would have been, in effect, saying to the jury, that they were at liberty to ignore all the testimony offered by the plaintiff, notwithstanding there was evidence in the cause from which the jury could have inferred that the defendant, by the exercise of reasonable care, might have avoided the happening of the injury complained of.

In the case of *Baltimore City Pass. Railway vs. McDonnell,* 43 *Md.,* 552, which is, in some respects, closely analogous to the case under consideration, the late Mr. Justice GRASON, delivering the opinion of the Court, said: "It was contended by the counsel of the defendant that, if the driver saw that the railroad track was clear, and no one upon it, he had performed all that ordinary care and prudence required of him, and it was not for him to suppose that any one would put himself in the way of the car by attempting to cross in front of it. In a large, populous city, where all descriptions of vehicles are constantly passing and repassing, as well as persons on foot, including the aged and infirm, as also children who are young and wanting in prudence and discretion, it is the duty of drivers of cars not only to see that the railroad track is clear, but also to exercise a constant watchfulness for persons who may be approaching the track. Unless he does so, he does not exercise that ordinary care and prudence which the law imposes upon him. In this case there is proof tending to show that instead of exercising such watchfulness, his attention was occupied by a young lady standing in the door of a house on the opposite side of the street from that from which the plaintiff was approaching."

We think the Court committed no error in submitting the case to the consideration of the jury, and finding no

error in any of its rulings, the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 13th March, 1894.)